IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD A. LEAVITT,<br><br>               Petitioner,<br><br>v.<br><br>A.J. ARAVE, Warden<br><br>               Respondent. | Case No. CV-93-0024-S-BLW<br><br>**CAPITAL CASE**<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court in this capital habeas matter is Respondent's Motion for Summary Judgment. To avoid further delay, the Court has determined that the Motion will be submitted on the briefs and the record without oral argument. D. Idaho L. Civ. R. 7.4(d).

For the reasons set forth more fully herein, the Court will deny the Motion. This matter will proceed to an evidentiary hearing on Petitioner's remaining claim that his appointed counsel was ineffective in failing to develop and present mental health evidence in mitigation during the resentencing proceeding.

## BACKGROUND

In 1985, a jury found Petitioner Richard Leavitt guilty of first degree murder

**ORDER  1**

for the stabbing death of Danette Elg.  After the verdict, trial counsel filed a motion requesting the appointment of a psychiatrist or a psychologist to examine Petitioner for sentencing purposes.  *State's Lodging A-3*, pp. 839-40.  The state district court granted this request and appointed Dr. David Grober, a psychologist, to conduct the examination.  *State's Lodging A-3*, pp. 844-45.

At the aggravation and mitigation hearing, Dr. Grober testified that he had diagnosed Petitioner as having an intermittent explosive disorder and an antisocial personality disorder.  *State's Lodging A-20*, pp. 2241.  Dr. Grober claimed that an intermittent explosive disorder, which is a recognized mental disease, may be caused in a small percentage of cases by a seizure problem or some other neurological deficit.  *State's Lodging A-20*, p. 2246.  Dr. Grober further testified that although he did not see an obvious neurological deficit based upon his testing, he was not skilled at neurological examinations, and one would be required to reach a definitive opinion.  *State's Lodging A-20*, pp. 2247-48.

At the conclusion of the hearing, trial counsel asked the district court to delay imposition of sentence until a neurological examination had been completed. The court granted that request, and appointed Dr. Clark Jaynes to complete the test. *State's Lodging A-20*, p. 2372-75.

Dr. Jaynes thereafter submitted a report, noting that a CT scan had revealed

**ORDER** 2

some slight abnormalities that suggested "the possibility of demyelinating disease." *State's Lodging A-20*, pp. 2406-07. Dr. Jaynes concluded that an MRI should be completed to determine whether Petitioner has an "organic or physiological dysfunction of the brain." *State's Lodging A-20*, p. 2407.

Petitioner's counsel orally moved for a new trial based upon the mental health evidence, which was denied. *State's Lodging A-20*, pp. 2406, 2408. Trial counsel then requested a continuance to conduct further testing, as suggested by Dr. Jaynes. *State's Lodging A-20*, p. 2408. The court also denied this request and thereafter sentenced Petitioner to death. *State's Lodging A-20*, p. 2411.

A new attorney, David Parmenter, was appointed to represent Petitioner during the post-conviction proceeding in district court, which was unsuccessful. On appeal, the Idaho Supreme Court affirmed the conviction, but remanded for resentencing, in part, because the district court had failed to adequately consider the mitigating evidence and weigh that evidence properly against each aggravating circumstance. *State v. Leavitt*, 775 P.2d 599, 607 (Idaho 1989).

At the beginning of the new sentencing hearing, Petitioner personally informed the district court that he wanted an updated presentence investigation report and a new psychological evaluation. *State's Lodging D-2*, pp. 2-3. In response, the court indicated that it would "consider what might need be done in

**ORDER 3**

addition to what we do today." *State's Lodging D-2*, p. 3.  Attorney Parmenter then presented new mitigating evidence, including testimony that Petitioner had behaved well in prison, was artistic and had written poetry, and had reestablished contact with his son.  *State's Lodging D-2*.  Parmenter did not present additional mental health evidence or otherwise revisit the evidence that had been developed four years earlier.  During his closing argument, he echoed his client's concern that a new presentence investigation report should be completed, but qualified this statement by mentioning that he had "not reviewed the statute and [didn't] know under what condition, if there's any specific length of time that is required." *State's Lodging D-2*, p. 87.  The district court noted Petitioner's request for a new presentence investigation report and a psychological evaluation, stating that it was "certainly going to consider that," *State's Lodging D-2*, p. 99, but the record does not contain an order disposing of those requests.

In its Memorandum Decision, the court found, as a statutory aggravating circumstance, that the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity.  *State's Lodging D-1*, pp. 20-22.  The court determined that the mitigating evidence, including the evidence presented at the first sentencing hearing, did not outweigh this aggravating factor, and it again sentenced Petitioner to death.  *Id.* at 37.  The sentence was affirmed by the Idaho

**ORDER  4**

Supreme Court.  *State v. Leavitt*, 822 P.2d 523 (Idaho 1991).

In 1993, Petitioner filed a federal habeas petition, which he amended in 1995.  *Docket Nos. 13, 41*.  In Claim 9, Petitioner alleged, in part, that Parmenter "failed to pursue any investigation of the mental condition of the Petitioner, either to obtain further reports on the organic brain damage located in 1985 or to obtain an independent psychological examination."  *First Amended Petition*, p.21.  *First Amended Petition*, pp. 19-23.  This Court dismissed Claim 9 as procedurally defaulted, but later granted relief on Petitioner's unrelated claim that the jury instructions unconstitutionally diluted the State's burden of proof.  *Docket No. 141*, pp. 11-15.

On appeal, the Ninth Circuit reversed this Court's decision on the instructional issue.  *See Leavitt v. Arave*, 383 F.3d 809, 816-26 (9th Cir. 2004).  The Ninth Circuit remanded the case, however, for consideration of Petitioner's allegation that his counsel was ineffective at the resentencing hearing.  *Id*. at 840.

At a scheduling conference following the remand order, the Court indicated that it was inclined to proceed to an evidentiary hearing to resolve the remaining claim, but it granted Respondent's request for permission to file a dispositive motion.  Briefing on Respondent's Motion for Summary Judgment is now complete, and the matter is ripe for a decision.

**ORDER  5**

## STANDARD OF LAW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.*

The summary judgment rule applicable to ordinary civil cases must be construed in harmony with established habeas practice and procedure. *See* Rule 11 of the Rules Governing Section 2254 Cases. Specifically, a federal court is required to hold an evidentiary hearing in a habeas case when the following two conditions have been satisfied: (1) the state court trier of fact has not reliably found the relevant facts after a full and fair hearing, and (2) the petitioner has presented a "colorable" claim on the merits, meaning he has alleged facts that, if proven to be true, would entitle him to relief.[1] *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992); *Townsend v. Sain*, 372 U.S. 293 (1963).

Here, the state court did not make findings of fact with respect to any claims

---

[1] This case is governed by the law in effect before the enactment of the Antiterrorism and Effective Death Penalty Act.

**ORDER  6**

of ineffective assistance of counsel.  Therefore, summary judgment is appropriate only if Petitioner has not come forward with a colorable Sixth Amendment claim. To establish such a claim, Petitioner must allege specific facts that, if true, would show that his counsel's performance was deficient and that the defense was prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 684 (1984).

Deficient performance under these circumstances means that counsel's representation fell below an objective standard of reasonableness measured under prevailing professional norms.  *Id*. at 684, 694.  To prove prejudice, Petitioner must demonstrate that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different.  *Id*. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.  Unless Petitioner is able to make both showings, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."  *Id*. at 687.

## DISCUSSION

Petitioner first alleges that his attorney during the resentencing proceeding wholly failed to investigate a relevant line of mitigating mental health evidence, despite the partial development of such evidence at the first sentencing hearing.  If true, this allegation could support a finding that counsel's representation fell below

**ORDER 7**

an objective standard of reasonableness.

By the time of Petitioner's resentencing hearing, it was clear that defense counsel has a duty to investigate thoroughly a defendant's background and character in preparation for the penalty phase in a capital case. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 396 (2000). The United States Supreme Court has found violations of this duty, particularly when bits of information were available to counsel – information that should have prompted a deeper investigation which, in turn, would have uncovered additional mitigating evidence. *See Williams*, 529 U.S. at 395-96 (counsel's failure to uncover a wealth of mitigating evidence regarding the defendant's abusive background and borderline retardation was unreasonable); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (failure to investigate the defendant's social history, beyond reviewing few documents, was unreasonable); *Rompilla v. Beard*, 125 S.Ct. 2456, 2464 (2005) (failure to review the court file on defendant's prior conviction was unreasonable given that the prosecution relied on that conviction in aggravation). The Ninth Circuit has also found colorable claims under similar circumstances. *See, e.g., Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006); *Earp v. Ornoski*, 431 F.3d 1158, 1171 (9th Cir. 2005). On its face, Petitioner's allegation appears to fall in line with these cases.

**ORDER  8**

Respondent counters that counsel made a tactical decision not to develop additional mental health evidence.  Respondent contends that counsel focused on other mitigating evidence in light of the state district court's unwillingness to allow neurological testing at the first sentencing hearing and the Idaho Supreme Court's dismissive treatment of the mental health evidence already in the record.  While Respondent may have isolated a factual dispute, he has not provided a basis for the court to resolve that dispute as a matter of law.  The scope and extent of counsel's investigation – particularly his decision-making with respect to the type of mitigation case that would be presented – raise material issues of fact outside of the record that cannot be resolved in the absence of a hearing.  *See Earp*, 431 F.3d at 1179.

The Court likewise concludes that Petitioner has established a colorable claim of prejudice.  Petitioner has now supported his claim with reports from two mental health experts and a declaration from an investigator/mitigation specialist, presumably containing the material that Petitioner believes his counsel would have uncovered had he been diligent.  The import of this evidence appears to be that Petitioner's "explosive" behavior has a biological basis, possibly the result of a brain injury.  In particular, Dr. James Missett, a psychiatrist, has concluded that Petitioner suffered frontal lobe damage during a sledding accident as a child, and

**ORDER  9**

that the correct diagnosis in 1989 should have been Organic Personality Disorder (under the DSM-III-R), rather than Intermittent Explosive Disorder.  *Report of Dr. James R. Missett*, p. 3, 7-8.  Similarly, Dr. Craig Beaver asserts that while Petitioner "displays elements that would meet the diagnostic criteria of [an explosive personality disorder]," such a diagnosis "is likely not applicable given concern [that] organic factors play a significant role with [Petitioner's] behaviors."  *Report of Dr. Craig W. Beaver*, ¶¶ 2-3.  Dr. Beaver also believes that evidence was available at the time of the resentencing hearing that could have rebutted a finding that Petitioner was a danger to others.  *Id*. at ¶ 6.  The facts proffered in the mitigation specialist's declaration provide some background for these conclusions.  *Declaration of Mary C. Goody*.

Respondent asserts that even if defense counsel had presented evidence of an organic basis for Petitioner's explosive disorder, Petitioner still cannot show a reasonable probability of a different sentencing outcome.  The Court cannot make such a determination, however, without first assessing the credibility of the newly proffered evidence at an evidentiary hearing, and then weighing that evidence together with the other aggravating and mitigating evidence in the record.  *See Wiggins*, 539 U.S. at 536.

The Court concludes only that Petitioner has surpassed the "relatively 'low

**ORDER  10**

bar'" of alleging a colorable Sixth Amendment claim, requiring an evidentiary hearing. *Landrigan*, 441 F.3d at 650 (citing *Earp*, 431 F.3d at 1170). The Court expresses no opinion on the ultimate merit of the claim.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 175) is DENIED.

IT IS FURTHER ORDERED that this case shall proceed to the evidentiary hearing set for June 12, 2006. The Court notes that this date has been set since October 20, 2005. The Court recognizes that it has allowed Petitioner additional time to submit facts in opposition to Respondent's Motion for Summary Judgment, delaying a ruling on the Motion, but the Court set the hearing date early in this process precisely to give sufficient notice to the parties to begin preparation in the event that the case went to trial. Accordingly, the Court does not intend to vacate and reset the evidentiary hearing date.

IT IS FURTHER ORDERED that the parties shall adhere to the following schedule:

1. Petitioner shall disclose the expert witnesses that he intends to call at the evidentiary hearing within seven days of the date of this Order. Respondent shall disclose his expert witnesses no later than June 2,

**ORDER** 11

2006.  Disclosures shall include a written report in accordance with Federal Rule of Civil Procedure 26(b).

2. Discovery shall be completed by June 7, 2006.

3. On or before June 7, 2006, the parties shall file with the Court a list of the witnesses they intend to call at the hearing.

4. On or before June 7, 2006, each party shall submit a prehearing memorandum, briefly summarizing the expected testimony of each witness and the party's legal argument.

5. On or before June 7, 2006, the parties shall exchange a list of exhibits. The exhibit list shall follow the guidelines in Local Rule 16.3(f). Petitioner shall use consecutive exhibit numbers 1-999.  Respondent shall use consecutive exhibit numbers 1000-1999.

6. On or before June 9, 2006, the parties shall submit two copies of pre-marked exhibits to the Court, accompanied by a notice indicating which exhibits on the opposing side's list may be admitted by stipulation and any objections to the other side's exhibits.

IT IS FURTHER ORDERED that within two weeks of the date of this Order, Petitioner shall submit a confidential proposed budget for Phase IV of the Capital Habeas Budgeting Phases.  If necessary, the Court will schedule an *ex*

**ORDER  12**

*parte* hearing to address budgetary matters.



DATED: **May 8, 2006**

_____
B. LYNN WINMILL
Chief Judge
United States District Court

**ORDER  13**