UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD A. LEAVITT,<br><br>                      Petitioner,<br><br>    v.<br><br>A.J. ARAVE, Warden, Idaho Maximum Security Institution,<br><br>                      Respondent. | Case No. 1:93-cv-0024-BLW<br><br>**ORDER** |

Before the Court is Petitioner's Emergency Motion for Order to Submit Evidence for Testing and For Order Shortening Time for Response. (Dkt. 330.) Petitioner seeks an order requiring the Blackfoot Police Department to release certain blood samples in its possession so that they can be submitted to a private laboratory in Utah for DNA testing. (*Id*. at 1.) According to Petitioner, because the Court has authorized funds for his counsel to pay for DNA testing under 18 U.S.C. § 3599(f), it also has the authority to order the evidence to be released as a means of assuring his right to the meaningful assistance of counsel in the state clemency matter. (*Id*. at 2.) Respondent objects to the Motion, claiming that the Court lacks jurisdiction to issue such an order. (Dkt. 332.) After considering the parties' written and oral arguments, the Court finds Respondent's objection to be well-taken, and the Motion will be denied.

ORDER - 1

On May 21, 2012, the Court granted Petitioner's request for an order requiring Respondent, the Warden at the Idaho Maximum Security Institution, to allow Petitioner to meet with a retained expert at the prison with the primary purpose of supporting his state clemency petition. (Dkt. 329.) In doing so, the Court found that unique circumstances dictated that result. Those circumstances included a previous agreement by the Warden to allow the expert's visit, the arbitrary timing of the issuance of the death warrant the day before the scheduled visit, the relatively lengthy time between the visit and the execution date, and the lack of prejudice to State. (*Id*. at 4-5.) In addition, the Warden, to whom the Order was directed, is subject to the Court's jurisdiction as a party to this habeas corpus action. The Court cautioned that "other deviations or disruptions closer to the scheduled [execution] date might call for a different conclusion." (*Id*. at 5.) Overall, the equities strongly favored Petitioner's position.

The present request is markedly different. First, while the Supreme Court has established that 18 U.S.C. § 3599(e) authorizes a federal court to compensate appointed counsel in state clemency matters, *see Harbison v. Bell*, 556 U.S. 180, 194 (2009), nothing in the *Harbison* decision can be read as bestowing jurisdiction upon the federal courts to order an uncooperative entity or person, not a party to the case before it, to release evidence to a prisoner so that he can pursue state clemency relief. In *Harbison*, the Supreme Court held only that federal courts have the authority to compensate counsel and to provide funding for ancillary services; it did not hold that such authority brings with it a subsidiary power to oversee the gathering of evidence in the state clemency process.

ORDER - 2

*See*, *e.g.*, *Baze v. Parker*, 632 F.3d 338, 342-47 (6th Cir. 2011) (holding that neither § 3599 nor the All Writs Act, 28 U.S.C. § 1651, conferred jurisdiction on a federal district court order prison officials to allow a death sentenced inmate to conduct clemency interviews). Considerations of federalism dictate that this Court may appoint and pay counsel but that it must thereafter stay its hand. The Court agrees with the Sixth Circuit's observation in *Baze* that "[a]lthough state interference with a defendant's efforts to obtain evidence in support of a state clemency petition could be a problem, a solution is more appropriately fashioned in state court and, in any case, is nowhere to be found in 18 U.S.C. § 3599." *Id*. at 344.

Moreover, Petitioner has not explained why he has waited until the late stages of his lengthy journey through the state and federal courts to re-investigate the blood sample evidence or to request access to that evidence for DNA testing. Notably, Petitioner has never sought DNA testing under the state post-conviction procedure that the Idaho Legislature enacted for that specific purpose in Idaho Code §§ 19-2719(4), 19-4901, 19-4902. *See, e.g., District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) (noting that state post-conviction procedures in the case before it "are adequate on their face, and without trying them, [the plaintiff] can hardly complain that they do not work in practice.")

Petitioner's counsel indicate that they recently discovered that the State re-submitted evidentiary material to the Idaho State Police forensics lab in 2001, most likely in conjunction with a scheduled retrial that never occurred. But it appears that criminalists

ORDER - 3

at the lab either did not conduct DNA testing or were unable to reach a result because the evidence had been contaminated or degraded. The Court has no reason to believe that state officials have failed to disclose exculpatory evidence to Petitioner.

Finally, when the Court authorized the expenditure of funds for DNA testing, it expressed doubt that the proposed testing would bring favorable results, and it continues to adhere to that view. (Dkt. 322, p. 3.) This is so because blood test results were part of the State's case against Petitioner, and the suspect's blood that was found mixed with the victim's blood was determined to be Type O with certain genetic markers, which matched Petitioner's blood sample. A serological expert testified at trial that of the sixteen suspects who had been tested, Petitioner was the only likely depositor of the blood, and only one percent of the population shared his particular combination of typing and genetic markers. (State's Lodging A-16, p. 1371.) The police also learned that Petitioner had received treatment for a serious cut on his finger on the night that the victim had been murdered. He lied about the source of the cut, either to the police during the investigation when he said that he was cut on a fan blade, or at trial when he gave a different explanation, or on both occasions.

In an attempt to negate the impact of the blood evidence, Petitioner testified at trial that he had been in the victim's bedroom a week before the murder and had a nosebleed. According to him, he had wiped his nose on the victim's clothing to staunch the bleeding. In short, Petitioner long ago *admitted* that his blood was in the victim's bedroom; he just

ORDER - 4

differed with the State as to how and when it got there.

To the extent that Petitioner's present Motion can be alternatively construed as a request for discovery in the habeas corpus matter, brought under Rule 6 of the Rules Governing Section 2254 Cases, it will be denied as lacking in good cause. *Bracy v. Gramley*, 530 U.S. 899, 908-09 (1997). Petitioner has not linked the potential discovery that he seeks to any habeas claim or issue currently before the Court. His counsel's vague suggestion at oral argument that DNA test results might support a claim of ineffective assistance of trial counsel, which had previously been dismissed as procedurally defaulted and could be the subject of the pending Rule 60(b) Motion for Relief from Judgment, is unavailing. The request is also tardy and speculative in light of the established evidentiary record before the Court. *See Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999).

For these reasons, the Court will deny Petitioner's Emergency Motion.

## ORDER

**IT IS ORDERED** that Petitioner's Emergency Motion for Order to Submit Evidence for Testing and for Order Shortening Time for Response (Dkt. 330) is DENIED.

DATED: **May 23, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge

ORDER - 5