UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD A. LEAVITT, | Case No. 1:93-cv-0024-BLW |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| A.J. ARAVE, Warden, Idaho Maximum Security Institution, | |
| Respondent. | |

## INTRODUCTION

Pending before the Court in this capital habeas matter is Petitioner's Motion for Relief from Judgment [and] Application for Further Stay of Execution. (Dkt. 318.) Having recently completed all appeals, Petitioner has now returned to this Court seeking relief from judgment based on a March 2012 Supreme Court case, *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), which recognized for the first time that serious errors committed by a habeas petitioner's state post-conviction counsel may serve as a reason to excuse the petitioner's failure to exhaust claims of ineffective assistance of trial counsel. Relying on *Martinez*, Petitioner argues that he was unable to exhaust certain trial-related ineffective assistance claims because of the ineffective assistance of his appointed post-conviction counsel.

**MEMORANDUM DECISION AND ORDER - 1**

For the reasons set for more fully below, the Court concludes that Petitioner has failed to show that extraordinary circumstances exist to reopen the judgment. In reaching that conclusion, the Court finds that Petitioner is barred from requesting reconsideration of any claims that have been already decided on the merits in this habeas matter or from adding new grounds for relief that were not included within Claim 9 of the First Amended Petition. In addition, Petitioner has not established that any of his defaulted claims of ineffective assistance of trial counsel are substantial. *Martinez* therefore provides him no relief.

## BACKGROUND

On July 21, 1984, the decomposing body of Danette Elg was discovered in her home. She had been stabbed repeatedly with exceptional force and had died on her punctured waterbed. After a brief investigation, Richard Leavitt was charged with Elg's murder.

The Bingham County Public Defender, David Parmenter, was appointed to represent Leavitt. (State's Lodging A-1, pp. 4-5.) Parmenter had filed several routine motions when Leavitt's family hired private counsel, Jay Kohler, who was assisted by his co-counsel Ron Hart. (State's Lodging A-1, pp. 17-18.) The case proceeded to a jury trial with attorneys Kohler and Hart, after which Leavitt was convicted of first degree murder and other associated felonies. (*Id.* at 815-17.) In 1985, the state trial court sentenced him to death. (*Id.* at 862-67.)

Within 42 days of judgment, a post-conviction petition alleging ineffective

**MEMORANDUM DECISION AND ORDER - 2**

assistance of trial counsel was filed on Leavitt's behalf, in compliance with Idaho's special pre-appeal, post-conviction procedure governed by Idaho Code § 19-2719. (State's Lodging B-1, pp. 1-3.) The trial court then re-appointed Parmenter to represent Leavitt in the post-conviction matter while the direct appeal was delayed. (State's Lodging A-3, pp. 880.) After an evidentiary hearing in April 1987, at which Jay Kohler and other witnesses testified about aspects of trial counsel's representation, the trial court denied relief. (*Id*. at 10-18; State's Lodging B-2, pp. 145-75.)

During the subsequent appeal to the Idaho Supreme Court ("the 1989 appeal"), Parmenter raised issues of ineffective assistance of trial counsel, including allegations that Kohler and Hart had failed (1) to call witnesses as requested by Leavitt to show the supposed bias of the Blackfoot Police Department, (2) to present evidence regarding voice identification, (3) to pursue evidence of alternative perpetrators, and (4) to object to prosecutorial misconduct. (State's Lodging C-1, pp. 29-33.) The Idaho Supreme Court rejected all of these issues, finding that "the defendant's asserted deficiencies of counsel deal with disagreements with strategic judgments with his trial counsel." *State v. Leavitt*, 775 P.2d 599, 605 (Idaho 1989) ("*Leavitt I*"). The Idaho Supreme Court also determined that even if trial counsel had committed errors, Leavitt had not shown that his right to a fair trial had been prejudiced. *Id*. While the court affirmed all other trial-related claims, it reversed Leavitt's death sentence and remanded for resentencing. *Id*. at 607.

Parmenter continued to represent Leavitt during resentencing proceedings in the state district court. (State's Lodgings D-2.) After conducting a second sentencing hearing

**MEMORANDUM DECISION AND ORDER - 3**

in late 1989, the trial court re-imposed a death sentence in early 1990. (State's Lodging D-2, pp. 19-37.) Parmenter did not seek post-conviction relief from the new sentence, and his second appeal to the Idaho Supreme Court on Leavitt's behalf was unsuccessful. *State v. Leavitt*, 822 P.2d 523 (Idaho 1991) ("*Leavitt II*").

With the assistance of new counsel, Leavitt filed a Petition for Writ of Habeas Corpus in this Court in 1993, which he later amended. (Dkts. 13, 41.) In Claim 9 of the First Amended Petition, Leavitt alleged that he had been deprived of his Sixth Amendment right to the effective assistance of counsel at trial, post-conviction, re-sentencing, and on appeal. (Dkt. 41, pp. 19-23.) Specifically, he alleged that his appointed attorneys were ineffective in the following ways:

(a)  Failing to object to the prosecutor's questioning of witnesses about Leavitt's exercise of his constitutional right not to provide a blood sample without a warrant (¶ 59-62);

(b)  Failing to have Leavitt examined by an independent psychiatric expert before trial (¶ 63-65);

(c)  Not investigating Leavitt's mental condition as mitigating evidence before the 1989-90 resentencing hearing (¶ 65-70);

(d)  Failing to "investigate and call witnesses to show police bias against [Leavitt] and to counter the forensic serology evidence introduced by the state" (¶ 70);

**MEMORANDUM DECISION AND ORDER - 4**

(e)     Not objecting to prosecutorial misconduct "during trial and closing argument" (¶ 71);

(f)     Failing to "move for the exclusion of certain evidence including testimony that Petitioner had a knife while engaging in consensual sexual intercourse with a woman and the improper cross-examination of [Leavitt] by the prosecution"; (¶ 72);

(g)     Failing to investigate and prove "the existence of juror misconduct" (¶ 73);

(h)     Failing to investigate and raise instructional issues "on appeal and in the post-conviction proceeding," including the trial court's failure to instruct on the presumption of innocence and the requirement of proof beyond a reasonable doubt. (¶ 74).

(Dkt. 41, pp. 19-23.)

Respondent filed an Answer, asserting that numerous claims had not been properly exhausted in the Idaho Supreme Court and must be dismissed as procedurally defaulted, including Claim 9. (Dkt. 43, pp. 6-7.) Leavitt submitted a Traverse, contending, in part, that Claim 9 "was either considered by the court in the first post-conviction petition or defaulted because of the ineffective assistance of counsel on the consolidated appeal and post-conviction." (Dkt. 46, p. 4.) He also argued that David Parmenter failed to assert his own ineffectiveness after the 1989 appeal and the resentencing proceeding because he had a conflict of interest that prevented him from doing so, which served as "cause" to excuse

**MEMORANDUM DECISION AND ORDER - 5**

any default.  (*Id.*)

In 1996, this Court concluded that those portions of Claim 9 alleging ineffective assistance of counsel at *trial* (Kohler and Hart) and *resentencing* (Parmenter) were procedurally defaulted. (Dkt. 62, pp. 13-15.) The Court found it unnecessary to resolve the procedural default question as to Leavitt's allegation of ineffective assistance of *appellate* counsel (Parmenter), which presented a conceptually more difficult exhaustion issue, because Leavitt had "fail[ed] to allege any instance of incompetence by his appellate counsel that could have resulted in prejudice to [him]." (*Id.* at 14-15.) In reaching that conclusion, the Court noted that the only allegations of ineffectiveness that Leavitt had offered involved Parmenter's failure to challenge certain jury instructions on appeal, which the Court determined had been implicitly reviewed on the merits and denied by the Idaho Supreme Court. (*Id.* at 15.) Because the Idaho Supreme Court had reviewed the merits, Leavitt could show no prejudice from Parmenter's omission of those issues in his brief. (*Id.*)

In that same Order, the Court turned aside Leavitt's contention that a "conflict of interest" could serve as a reason to excuse his default of his claims of ineffective assistance of trial counsel. (Dkt. 62, p. 15-17.) The Court reached this conclusion because Parmenter had substituted as new counsel before the post-conviction proceeding, meaning that he would have had no conflict that inhibited him from raising any claim as to the quality of Kohler and Hart's representation at the criminal trial and the first sentencing

hearing.[1] (*Id*.)

The Court acknowledged that Parmenter may have had a conflict that prevented him from asserting his own ineffectiveness *after* the direct appeal and the resentencing hearing on remand, but binding Ninth Circuit law at the time precluded Leavitt from relying on such a conflict to establish cause for the default of those claims. (*Id*. at 17.) In particular, the Court wrote that "because a state prisoner has no Sixth Amendment right to effective assistance of counsel during a state collateral proceeding, counsel's alleged conflicts, failures, or omissions in a post-conviction action can never establish cause." (*Id*.) (citing *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996); *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996)).

Based on this analysis, the Court dismissed Claim 9 from the Amended Petition as procedurally defaulted. (Dkt. 62, p. 19.)

Leavitt filed a motion for reconsideration of the Court's decision to dismiss the claim of ineffective assistance of *appellate* counsel (Parmenter), but not the dismissal of the *trial* counsel claims, arguing that the Court erred in construing his allegations too narrowly. (Dkts. 66, 67.) The Court denied the motion after finding that Leavitt had not fairly apprised Respondent or the Court in the Amended Petition of any additional factual allegations. The Court also declined, as futile, Leavitt's invitation to amend his Petition a

---

[1] In fact, Parmenter *did* raise such claims in the 1986-87 post-conviction matter and in the 1989 appeal, and the Idaho Supreme Court denied the claims on their merits. It now appears that this Court's 1996 procedural default order was overinclusive – as the Ninth Circuit Court of Appeals would later point out – but Leavitt has never sought reconsideration on that basis. This issue will be discussed in greater detail, below.

**MEMORANDUM DECISION AND ORDER - 7**

second time to raise those allegations. (Dkt. 69.)

In 2000, the Court denied Leavitt's remaining habeas claims on the merits, but later reconsidered its decision and granted relief on the grounds that the jury instructions were unconstitutionally deficient in defining reasonable doubt. (Dkt. 120, 142.) The Court entered an Amended Judgment and ordered a new trial, but stayed its order pending an appeal. (Dkts. 142, 158.)

On appeal, the Ninth Circuit Court of Appeals held that Leavitt's claim raising the unconstitutionality of the reasonable doubt instructions was barred by the non-retroactivity doctrine announced in *Teague v. Lane*, 489 U.S. 288 (1989), and it reversed this Court's decision to grant relief on that claim. *See Leavitt v. Arave*, 383 F.3d 809, 818-23 (9th Cir. 2004) ("*Leavitt III*").

In that same opinion, the Ninth Circuit affirmed this Court's rulings as to the dismissal of Leavitt's claims of ineffective assistance of trial and appellate counsel. *Leavitt III*, 383 F.3d at 840. In doing so, however, it found that this Court had erred in "holding that *all* of Leavitt's trial-based claims of ineffective assistance were procedurally defaulted," because some of those claims had been exhausted but were nonetheless meritless. *See id*. at 840, n.40 (emphasis in original). The court cited two such claims that had been properly exhausted  – trial counsel's failure to call a serology expert to testify about the blood evidence and to call police officers to show bias and prejudice – and determined that those claims "lose on the merits" because they were based on

counsel's "tactical decisions." *Id*.

Despite affirming this Court's decisions as to the trial and appellate ineffective assistance claims, the Ninth Circuit reversed the Court's dismissal of Leavitt's claim that Parmenter had been ineffective at the resentencing proceeding in 1989-90. *Leavitt III*, 383 F.3d at 840. On that point, the Circuit found merit in Leavitt's argument that the failure to appoint new counsel for a post-conviction action after the resentencing hearing rendered any state default rule unfair and inadequate to bar habeas review on the merits of those claims. *Leavitt III*, 383 F.3d at 840. The case was remanded for consideration of whether Parmenter was constitutionally ineffective during resentencing. *Id*.

On remand, the Court held an evidentiary hearing and concluded that Leavitt had established a Sixth Amendment violation because of Parmenter's failure to investigate and present mitigating mental health evidence. (Dkt. 296, 297.) The Court's judgment was again stayed pending appeal, and the Ninth Circuit reversed the grant of habeas relief a second time. *Leavitt v. Arave*, 646 F.3d 605, 616 (9th Cir. 2011) ("*Leavitt IV*").

Leavitt next filed a Petition for a Writ of Certiorari in the Supreme Court. While his Petition was pending, the Supreme Court issued its opinion in *Martinez v. Ryan*, 132 S.Ct. 1309 (March 20, 2012), establishing for the first time that inadequate post-conviction counsel may, under limited circumstances, be a valid "cause" that excuses a procedural default in a federal habeas proceeding. *Id*. at 1319. Based on *Martinez*, Leavitt filed the pending Rule 60(b) Motion for Relief from Judgment on May 11, 2012, claiming

**MEMORANDUM DECISION AND ORDER - 9**

that "the Court's dismissal of Claim 9 because of procedural default was incorrectly decided."[2] (Dkt. 318, pp. 1, 11-12.)

The Supreme Court denied certiorari on May 14, the Court of Appeals issued its Mandate on May 16, and the state district court signed a death warrant for Leavitt the next day, setting an execution date of June 12, 2012. (Dkts. 320, 321, 327-1.)

Respondent has submitted his Response to the Rule 60(b) Motion (Dkt. 337), and Petitioner has filed a Reply (Dtk. 344). The Court has heard the parties' oral argument and it is now prepared to issue its ruling.

## STANDARD OF LAW

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including the catch-all category "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). A motion seeking relief from judgment under subsection (b)(6) must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Rule 60(b)(6) should be used "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). Accordingly, the Rule allows relief only when a party can establish that "extraordinary circumstances prevented [it] from taking timely action to prevent or

---

[2] Leavitt does not seek reconsideration the Court's 1996 dismissal of those aspects of Claim 9 in which he alleged that David Parmenter was ineffective at the resentencing hearing, because he concedes that claim has already been resolved on the merits. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 10**

correct an erroneous judgment." *Id*.

## DISCUSSION

### 1.    All Claims That Have Been Denied on the Merits, and All New Claims for Relief, Are Barred

In habeas corpus cases, Rule 60(b) motions may not be used to avoid the prohibition set forth in 28 U.S.C. § 2244(b) against second or successive petitions. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

In *Gonzalez*, the Supreme Court held that a Rule 60(b) motion constitutes a second or successive habeas petition when it adds "a new ground for relief" or "attacks the federal court's previous resolution of a claim *on the merits* of the petitioner's claims." *Gonzalez*, 545 U.S. at 532 (emphasis in original). On the other hand, a Rule 60(b) motion does not constitute a second or successive petition when the petitioner "merely asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *See id.* When "no 'claim' is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application." *Id*. at 533.

Although Leavitt seems to challenge the entirety of the Court's ruling that Claim 9 was procedurally defaulted (excluding allegations that Parmenter was ineffective at the resentencing hearing), some of these claims have already been denied on the merits in this habeas matter. For instance, Leavitt asserts that "trial counsel employed no mental health

**MEMORANDUM DECISION AND ORDER - 11**

experts prior to trial and did not present significant expert evidence regarding blood located at the scene." (Dkt. 318, p. 12.) While the first part of this claim – corresponding to ¶ 63 in the Amended Petition – has been dismissed as defaulted without a merits ruling, the latter part – corresponding to ¶ 70 – was found to be meritless by the Ninth Circuit in *Leavit III*. *See* 383 F.3d at 840 n.40. Likewise, this Court denied Leavitt's claim of ineffective assistance of appellate counsel as lacking merit because he could not show prejudice from counsel's failure to present certain jury instructional issues on appeal. (Dkt. 62, pp. 14-15.) The Court declined to reconsider that decision or to broaden the factual allegations supporting the claim. (Dkt. 69.)

Similarly, Leavitt asserts new facts in support of his Rule 60(b) Motion that state entirely new grounds for relief. He now contends that "neither *trial counsel* nor post-conviction counsel challenged the erroneous instructions on the presumption of innocence, reasonable doubt and alibi." (Dkt. 318, p. 12.) (Emphasis added.) It is true that the Amended Petition contains a claim that "counsel on appeal and in the post-conviction proceeding failed to raise numerous issues in those proceedings. . . including, but not limited to, the trial court's failure to adequately instruct on the presumption of innocence and the requirement for proof beyond a reasonable doubt." (Dkt. 41, ¶ 74.) But in this paragraph Leavitt is clearly referring to David Parmenter, who was his "counsel on appeal and in the post-conviction proceeding." Notably absent is an allegation that *trial counsel* Kohler and Hart were ineffective in some manner by requesting or not objecting to these particular instructions during the criminal trial.

**MEMORANDUM DECISION AND ORDER - 12**

To the extent that Leavitt is requesting reconsideration of this Court's or the Ninth Circuit's resolution of the merits of any part of Claim 9, or he is attempting to introduce new factual allegations to state grounds that have never been alleged before, the Rule 60(b) motion is a second or successive application for habeas relief that lacks prior authorization from the Court of Appeals. *See* 28 U.S.C. § 2244(b). The Court has jurisdiction to consider Leavitt's Rule 60(b) motion, free of the constraints imposed by 28 U.S.C. § 2244(b), only to the extent he seeks to reopen the judgment to revisit the procedurally barred aspect of Claim 9. *See Ruiz v. Quarterman*, 504 F.3d 523, 526 (5th Cir. 2007) (finding § 2244(b) inapplicable where Rule 60(b) motion sought to reopen judgment on procedurally barred claim).

The Court now turns to Leavitt's contention that *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), constitutes an extraordinary circumstance warranting reopening the judgment as to defaulted claims.

### 2.      The New Rule – *Martinez*

A habeas claim that rests upon an independent and adequate state law ground is procedurally defaulted and can be reviewed on the merits only if the petitioner has established a valid cause for the default and shown actual prejudice as a result of the constitutional error, or if the petitioner can show that he is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "cause," the petitioner must demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Id.* at 488. To show "prejudice," the

**MEMORANDUM DECISION AND ORDER - 13**

petitioner bears the burden of demonstrating that the errors "worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

A criminal defendant generally bears the risk of attorney error, and "[t]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default," though *constitutionally* ineffective counsel may serve as cause. *Murray*, 477 U.S. at 486.

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court rejected a habeas petitioner's argument that his post-conviction counsel's failure to file a timely notice of appeal, which resulted in the default of his ineffective assistance of trial counsel claims, established a valid cause. *Id.* at 751-53. Relying on *Murray* and other cases, the Court found that because it had never held that there is a constitutional right to counsel in post-conviction matters, a claim of ineffective assistance of post-conviction counsel cannot excuse the petitioner's failure to raise a claim properly in state court. *Id.* at 753. The Court chose not to decide whether a limited exception may exist when a post-conviction proceeding represents the first opportunity under state law for a convicted state defendant to litigate claims of ineffective assistance of trial counsel. *Id.* at 755. The Ninth Circuit and other circuits later determined that such an exception does not exist. *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996); *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996).

Twenty years after *Coleman*, the Supreme Court recognized "a narrow exception"

**MEMORANDUM DECISION AND ORDER - 14**

that ineffective assistance of post-conviction counsel – while not stating a constitutional claim – can be a sufficient "cause" to excuse defaulted claims of ineffective assistance of trial counsel. *Martinez*, 132 S.Ct. at 1315.

In setting out the rule, however, the Court described two potential restrictions on the availability of the equitable relief. First, the state post-conviction proceeding must represent the initial opportunity under state law for a defendant to raise claims of ineffective assistance of trial counsel (it must be an "initial-review collateral proceeding" for those claims). *Id*. at 1317. Second, "[w]hen faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e*., it does not have any merit or it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Id*. at 1319.

### 3.    Leavitt is not Entitled to Rule 60(b) Relief Based on *Martinez*

The Ninth Circuit has recently discussed the factors that a court may consider when assessing whether *Martinez* justifies reopening a habeas judgment. *See Lopez v. Ryan*, 2012 WL 1676696 (9th Cir. 2012). In *Lopez*, Ninth Circuit examined the nature of the change in the law, the petitioner's diligence, finality interests, delay, the connection between the new rule and the current case, and comity interests. *Id*. at *3-6 (citing *Phelps v. Almeida*, 569 F.3d 1120 (9th Cir. 2009)). After weighing each factor, the court concluded that the petitioner in *Lopez* had not shown extraordinary circumstances. *Id*. at *6. It alternatively concluded that the petitioner's request was meritless because his

**MEMORANDUM DECISION AND ORDER - 15**

ineffective assistance of trial counsel claims were not "substantial." *See Lopez*, 2012 WL 1676696 at *6-7.

It is not necessary to apply the *Lopez* multi-factored test here. The Court assumes that most of those factors weigh in favor of at least reaching Leavitt's argument for reconsideration based on the change in the law. However, the Court concludes that his "*Martinez* claim" is not meritorious and does not entitle him to the relief that he seeks, which is further evidentiary development on selected claims of ineffective assistance of trial counsel.

## A.    The *Martinez* Exception Applies to Capital Cases in Idaho

Initially, Respondent argues that because Idaho law apparently discourages but does not prohibit defendants from raising issues of ineffective assistance of counsel on direct appeal, the *Martinez* rule does not apply in Idaho and is unavailable to save Leavitt's defaulted claims. The Court disagrees. Whatever relevance Respondent's argument might have in non-capital matters – a question the Court need not address – it overlooks the unique procedure that Idaho has established for capital defendants to raise post-conviction claims.

Over 25 years ago, the Idaho Legislature chose to enact a special expedited and unified post-conviction and appellate procedure that applies solely to capital cases. *See* Idaho Code § 19-2719. Within 42 days of judgment, a defendant who has been sentenced to death "must file any legal or factual challenge to the sentence or conviction that is known or reasonably should be known" in a post-conviction petition in the district court.

**MEMORANDUM DECISION AND ORDER - 16**

Idaho Code § 19-2719(3). The direct appeal is then delayed pending the completion of the post-conviction action, after which the direct appeal from the judgment of conviction and the collateral appeal from the district court's order in the post-conviction matter are consolidated into one case for unitary appellate review in the Idaho Supreme Court. Idaho Code § 19-2719(6).

By statute, a defendant is deemed to have waived all known claims, or claims that reasonably could have been known, that he did not assert in his first post-conviction action. Idaho Code § 19-2719(5). The Idaho Supreme Court has concluded that claims of ineffective assistance of trial counsel can reasonably be known within the time limits set out in Idaho Code § 19-2719. *See*, *e.g.*, *Pizzuto v. State*, 903 P.2d 58, 61 (Idaho 1995). This Court and the Ninth Circuit Court of Appeals have honored Idaho's application of the waiver rule in Idaho Code § 19-2719(5) to default claims of ineffective assistance on habeas review, at least insofar as a new attorney was appointed to represent the defendant in the state post-conviction action. *See Leavitt III*, 383 F.3d at 840; *see also Hoffman v. Arave*, 236 F.3d 523, 534 (9th Cir. 2001) (holding that the time bar will not default claims when new counsel was not appointed).

Accordingly, because capital defendants in Idaho must raise any claim of ineffective assistance of trial counsel in a post-conviction action that is then litigated before the direct appeal, this is the "initial-review collateral proceeding" as to those claims about which *Martinez* speaks. Idaho has chosen to use a unique expedited review system in capital cases; it must live with the consequences of that decision, one of which

**MEMORANDUM DECISION AND ORDER - 17**

is the potential application of *Martinez* to defaulted claims in capital cases on federal habeas review.

### B.  A "*Martinez* Claim" Does Not Need to be Exhausted

The Court is equally unpersuaded by Respondent's argument that Leavitt's failure to exhaust his argument for cause in the state courts means that he cannot advance it now.

Respondent notes correctly that in *Edwards v. Carpenter*, 529 U.S. 446 (2000), the Supreme Court held that a petitioner who relies on ineffective assistance of counsel to excuse the default of another claim, the ineffective assistance claim must itself be properly exhausted and free of procedural default. *Id*. at 452-53. But *Edwards* involved a petitioner who pointed to errors by his state counsel on direct appeal as the "cause" for his default of another claim. *Id*. at 450-51. The Supreme Court held that because the basis for the asserted "cause" – ineffective assistance on appeal – was a constitutional claim and could be an independent basis for relief, it must also be exhausted properly in the state courts. *Id*. at 453.

On the other hand, in *Martinez*, the Supreme Court did not announce a constitutional right to counsel in a state post-conviction proceeding, only an equitable right to seek relief from a procedural default in a federal habeas matter. Post-*Martinez*, neither Idaho nor any other state has an obligation under the Constitution to provide counsel in post-conviction actions or to offer a remedy if post-conviction counsel is ineffective.

Leavitt does not seek relief from his conviction or sentence because of ineffective

**MEMORANDUM DECISION AND ORDER - 18**

assistance during the post-conviction matter. He instead relies on that ineffective assistance as "cause" which opens a procedural gateway to *review* of the underlying defaulted claims on their merits. He had no obligation to exhaust such a theory prior to advancing it here.

**C.     Leavitt Has Not Established That His Post-Conviction Counsel Was Ineffective or That His Claims Are Substantial**

While Leavitt's claims under *Martinez* are properly before the Court, the Supreme Court's decision does not provide Leavitt with the relief that he seeks.

In *Martinez*, the Supreme Court looked to the familiar *Strickland* standard to assess whether post-conviction counsel made errors that were serious enough to excuse the default of other ineffective assistance of trial counsel claims. 132 S.Ct. 1309, 1318-19 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The Ninth Circuit has recently declared that, "*Martinez* made clear that a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice." *Sexton v. Cozner*, 2012 WL 1760304 *7 (9th Cir. May 14, 2012).

Under *Strickland*, a petitioner must show that his counsel's performance was both unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors. *Strickland*, 466 U.S. at 684. There is a strong presumption that an attorney performed within the wide range of professional competence, and the attorney's

MEMORANDUM DECISION AND ORDER - 19

performance will be deemed to have been deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Id*. at 689, 694. A defense attorney's tactical or strategic choices after an adequate inquiry into the facts and law are virtually unchallengeable under *Strickland*. *Gerlaugh v. Stewart*, 129 F.3d 1029, 1033 (9th Cir. 1997). To prove prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would have been different. *Id*.

"There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. As a result, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (internal quotations and citation omitted).

The application of the *Strickland* test to the present circumstances means that Leavitt is required to show that David Parmenter's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Leavitt would have received relief on a claim of ineffective assistance of trial counsel in state court. He has not carried this burden.

This is not a case in which post-conviction counsel wholly failed to raise any claims of ineffective assistance of trial counsel. To the contrary, the 1986-87 post-conviction proceeding focused primarily on such claims. An evidentiary hearing was

**MEMORANDUM DECISION AND ORDER - 20**

held, at which Parmenter presented the testimony of several witnesses, including Leavitt's mother, who provided the details of her hiring of trial counsel, and Leavitt himself, who testified about the various complaints that he had about trial counsel's handling of the case. (State's Lodging B-2, pp. 42-110.)

Kohler was called to testify by the State. (State's Lodging B-2, pp. 145-62.) Among other subjects, he discussed trial counsel's decision-making process regarding the defense team's use of a forensic serologist, Dr. Ed Blake. (*Id*. at 153-54.) According to Kohler, Blake had examined the testing methods and conclusions of Ann Bradley, the State's serological expert, and Blake essentially agreed with Bradley's results. (*Id*. at 154.) As a result, the defense team made a tactical decision not to call Blake at trial because – though he might have scored points on minor issues – his testimony would have had reinforced Bradley's testimony. (*Id*. at 155.)

Kohler also stated that Leavitt's case was complex and time consuming, and that his firm spent well over 900 hours representing him. (*Id*. at 151.) Although they had not received full payment for their services, Kohler claimed that trial counsel did not let that matter impinge on the representation. (*Id*. at 151-52.)

The trial court denied relief in a written decision, *see* State's Lodging B-1, pp. 11-18, and Parmenter asserted four instances of ineffective assistance of trial counsel on appeal. (State's Lodging C-1, pp. 29-33.) The Idaho Supreme Court held that "[the] defendant was not denied effective assistance of counsel," because "[a]ll of the defendant's asserted deficiencies of counsel deal with disagreements with strategic

**MEMORANDUM DECISION AND ORDER - 21**

judgments with his trial counsel" and he could show no prejudice. *Leavitt I*, 775 P.2d at 605.

In light of this developed record of post-conviction counsel's pursuit of relief based on ineffectiveness at trial, Leavitt has not overcome the presumption that Parmenter made reasonable strategic decisions as to which claims of ineffective assistance to raise and which claims to discard. *See Sexton*, 2012 WL 1760304, *5 (noting that counsel "is not necessarily ineffective for failing to raise even a nonfrivolous claim"); *cf. Smith v. Murray*, 477 U.S. 527, 535 (1986) (discussing how the process of eliminating weaker arguments is often the hallmark of effective advocacy). Absent a showing of unreasonable representation in the post-conviction matter, his *Martinez* claim fails on the first element of *Strickland*.

But even if Parmenter's failure to develop selected claims was objectively unreasonable, the Court nonetheless concludes that Leavitt was not prejudiced. The Court agrees with Respondent that no claim of ineffective assistance of trial counsel raised in Claim 9 has substantial merit such that the Court must reopen the judgment and allow additional proceedings on the claim.

In reaching this conclusion, the Court is not persuaded by Leavitt's argument that because he has never had an opportunity to develop any of these claims factually, he must be given the chance to do so now. Leavitt is facing three hurdles that stand in his way. First, given the procedural posture of this case, it is his burden to show that extraordinary circumstances warrant upsetting and revisiting the judgment. Second, *Martinez*

**MEMORANDUM DECISION AND ORDER - 22**

contemplates some showing by a habeas petitioner that his claim is "substantial" before additional time and resources must be expended on the claim. *See Martinez*, 132 S.Ct. at 1319. Finally, it has always been the case on habeas review that a federal court may resolve claims on the record without new evidentiary development if the petitioner has not come forward with factual allegations that, if proven, would establish he is entitled to relief. All of these principles coalesce to require Leavitt to show that his claims have some merit. He has not done so.

The Court will address each of those claims in turn.

(1)     *Failure to Object to Questions About Leavitt's Invocation of his Fourth Amendment Right (Dkt. 41, ¶¶ 59-62)*

Leavitt first contends that his trial counsel were ineffective because they did not object when the prosecutor questioned witnesses about Leavitt's choice to exercise his right, under the Fourth Amendment, to require the police to get a warrant before taking his blood.

The Ninth Circuit has rejected the underlying argument that Leavitt's due process rights were violated by the prosecutor's eliciting of this type of evidence at the criminal trial. *Leavitt III*, 383 F.3d at 828. After recognizing that a prosecutor's comments on a defendant's exercise of his Fourth Amendment rights are generally improper, the Court of Appeals wrote, "[r]egardless of whether that Fourth Amendment rule should generally apply to habeas corpus cases, Leavitt's particular objection is answered by the much more banal and obvious rule that admission of the evidence was proper to attack his claim of

**MEMORANDUM DECISION AND ORDER - 23**

cooperation." *Id*. In other words, "the prosecutor was entitled to question [Leavitt's theme of cooperation] by showing that the leitmotiv was actually one of resistence." *Id*.

Because the underlying claim has been ruled to be without legal substance, the failure of trial counsel to lodge an objection on a meritless ground was neither unreasonable representation nor prejudicial to Leavitt. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (stating that trial counsel cannot have been ineffective in failing to raise a meritless objection).

### (2)   *Failure to Request a Psychiatric or Psychological Examination Before Trial (Dkt. 41, ¶¶ 63-69)*

This issue has been examined on the merits as it pertains to David Parmenter's representation at the resentencing hearing. The only aspect of the claim that remains defaulted is that which pertains to trial counsel Kohler and Hart's failure to have Leavitt's mental condition tested before trial.[3]

In anticipation of the first sentencing hearing, trial counsel filed a motion requesting the appointment of a psychiatrist or a psychologist to examine Leavitt. (State's Lodging A-3, pp. 839-40.) The trial judge granted this request and appointed Dr. David Groberg, a psychologist, to conduct an evaluation and to submit a report. (*Id*. at 844-45.)

At the sentencing hearing, Dr. Groberg testified that he had diagnosed Leavitt as having an "antisocial personality disorder" and an "intermittent explosive disorder."

---

[3] It appears that Leavitt may have since abandoned this claim, but the Court will address it out of an abundance of caution.

**MEMORANDUM DECISION AND ORDER - 24**

(State's Lodging A-20, pp. 2236-38, 2241.) He did not find an organic brain deficit from his psychological testing, but he admitted that is was possible that such a deficit could cause Leavitt's behavior, and he was not skilled at giving neurological examinations. (*Id.* at 2247-48.) Based on this testimony, trial counsel asked the trial court to delay imposition of sentence until after a neurological examination could be conducted. (*Id.* at 2372-73.) The court granted that request and appointed a neurologist to complete the examination.  (*Id.* at 2403.) The neurologist saw abnormalities on Leavitt's CT scan that "may or may not have an effect on cognitive function." (*Id.* at 2406-07.) He recommended an MRI to determine whether Leavitt had an "organic or physiological dysfunction of the brain." (*Id.* at 2407.)

When the sentencing hearing reconvened, counsel orally moved for a new trial based upon Dr. Groberg's opinion and the neurologist's report. (State's Lodging A-20, pp. 2406, 2408.) The court denied that request, concluding that the new mental health evidence was not material to his trial defense, which was a complete denial, and that it did not show that Leavitt was incapable of committing the offense. (Exhibit 1075, p. 2408.) The case then proceeded to sentencing. (*Id.*)

On appeal, the Idaho Supreme Court affirmed the trial court's denial of the motion for new trial on the ground that the "new" evidence was immaterial:

> During all of the original trial proceedings the defendant denied involvement with the killing of the victim. That is a completely different defense than one now asserted which admits the criminal act, but denies culpability on the ground of inability to form the requisite intent. Further, the proffered psychological tests [which were considered by the trial court]

**MEMORANDUM DECISION AND ORDER - 25**

>indicate that the defendant purportedly suffers from anti-social personality
>disorder and an intermittent explosive disorder. There is no indication in the
>proffered evidence that either of those illnesses would have prevented the
>defendant from forming the requisite intent to murder.

*Leavitt I*, 775 P.2d at 605.

In his briefing, Leavitt does not discuss this issue but presumably his ineffective

assistance claim is based on an allegation that, had his trial counsel developed the mental

health evidence before trial, they would have been able to offer it as a partial or complete

defense to the murder charge. This Court agrees with the Idaho Supreme Court that

because a mental defect defense would have been contradictory to the reasonable doubt

defense that was presented at trial, and could have confused the jury or reduced the

credibility of the defense team. It also had little chance of success.

The defense that was presented at trial was consistent with Leavitt's wishes, as he

was insistent that he did not commit the crime. In fact, he testified at the post-conviction

evidentiary hearing that Kohler broached the issue of a possible mental disease or defect

defense during the trial but that he did not agree with "that particular strategy." (State's

Lodging B-2, p. 107-08.) Thus, Leavitt implied then that Kohler's mere suggestion of a

mental disease or defect defense was an example of his inconsistency and ineffectiveness,

but by the time he came to federal court he apparently believed that Kohler should have

presented a mental disease or defect defense against his wishes. This post-hoc

rationalization does not support a claim of ineffective assistance of counsel.

>(3)   *Failure to Call Witnesses to Testify About Police Bias and to Counter the*

**MEMORANDUM DECISION AND ORDER - 26**

*State's Serological Evidence (Dkt. 41, ¶ 70.)*

In his next claim, Leavitt alleges that his trial counsel should have presented evidence to show police bias and to counter the conclusions of the State's serological expert. These claims were long ago denied on their merits. The Idaho Supreme Court rejected Leavitt's claim as to police bias, *see Leavitt I*, 775 P.2d at 605, and the Ninth Circuit denied both parts of the claim, *see Leavitt III*, 383 F.3d at 840 n.40. Those courts found that Leavitt was expressing only a disagreement with his attorneys' tactical decisions about which witnesses to call. Because this claim has previously been resolved on its merits, Leavitt's argument for reconsideration is barred. *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

Leavitt attempts to escape the grasp of this result, at least as it pertains to his counsel's failure to present expert serological testimony, by arguing that the Ninth Circuit's decision is dicta and was based on an incomplete record.[4] The Court is unconvinced, but even if it were to take a look at the merits of the issue as he now frames it, the Court would conclude that this is not a claim with substantial potential merit.

Leavitt asserts that the key mistake that trial counsel made was in not presenting Dr. Blake's testimony to show that "the two [blood] samples could have been deposited separately rather than being 'mixed' as the prosecution argued." (Dkt. 344, p. 12.) If Blake had provided that testimony, according to Leavitt, it would have supported the

---

[4] He concedes that the police bias aspect of this claim "does not meet the standards set forth in *Martinez*." (Dkt. 344, n.10.)

**MEMORANDUM DECISION AND ORDER - 27**

defense theory that Leavitt deposited his blood in Danette Elg's bedroom when his nose bled the week before her murder, rather than when he cut his finger while he was stabbing her to death. (*Id*.)

In his post-conviction testimony, Kohler addressed trial counsel's decision-making with respect to Blake's potential testimony. He stated that trial counsel carefully weighed the possibility that Blake might have supported their case in some ways, but ultimately concluded that Blake's material conclusions were very similar to Ann Bradley's. (State's Lodging B-2, pp. 154-55.) He testified that "with respect to the major evidentiary items, the shorts, the sheet, the blood samples from these items, and other items, his analysis was completely consistent with Ann Bradley's." (*Id*. at 154.) In addition to reviewing Blake's report, Kohler testified  that, over the course of  several phone conversations, Blake "indicated that he didn't feel like he could say anything that would rebut [sic] Ann Bradley's conclusions" and that "it was just a tactical decision that we made that he would do more harm than good." (*Id*. at 154, 174.)

The Ninth Circuit has noted that "[t]he choice of what type of expert to use is one of trial strategy and deserves 'a heavy measure of deference.'" *Turner v. Calderon*, 281 F.3d 851, 876 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 691). In *Turner*, the court declared that trial counsel "cannot be deemed ineffective because, with the benefit of hindsight, we now determine that other trial strategies or expert witnesses may have been a better choice." *Id*. Instead, "[c]ounsel [are] entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial

**MEMORANDUM DECISION AND ORDER - 28**

tactics and strategies." *Harrington v. Richter*, 131 S.Ct. 770, 789 (2011). That is what occurred in this case.

Moreover, Leavitt appears to overstate the significance of Blake's opinion about the lack of "mixing" between the Type A blood (Elg) and Type O blood (Leavitt) on one piece of clothing. At the post-conviction hearing, Kohler read a portion of Blake's report, in which Blake noted that "[a] weak A antigen may result from thin smears of A blood overlying the Type O blood." (State's Lodging B-2, pp. 166-67.) At most, then, Blake's report suggested that Elg's presumed blood may have overlaid Leavitt's presumed blood because of the "weak A antigen" response, but even if that theory were correct, Leavitt has pointed to no other evidence tending to show that a significant amount of time must have elapsed between the deposit of the two blood types on the clothing.

The Court also does not share Leavitt's interpretation of the record that "the evidence regarding the shorts was the sole item on which the state based its argument that Leavitt deposited the blood at the time of the killing." (Dkt. 344.) Also relevant was the serious cut to Leavitt's finger, for which he received medical treatment on or about the same night that Elg was believed to have been killed, and Leavitt's shifting versions about the source of that cut. The evolving nature of the "nosebleed" story itself was probative of his obfuscation on this issue: at first, he had no explanation for why his blood would be found at the crime scene, and he did not reveal until trial, after it was clear that the State had incriminating serological evidence, what would seem to be the very relevant information that he had a nosebleed in Elg's bedroom the week before she

**MEMORANDUM DECISION AND ORDER - 29**

was killed. *See Leavitt III*, 383 F.3d at 815.

Accordingly, counsel's choice not to offer an expert opinion that reinforced the most incriminating parts of the State's expert blood evidence, but that may have provided the defense with some incremental assistance in other areas, was a reasonable tactical decision.

### (4)    Failure to Object to Prosecutorial Misconduct (Dkt. 41, ¶ 71)

This claim is a close cousin to Leavitt's first claim and, as with that claim, the Ninth Circuit has already reviewed the underlying examples of alleged prosecutorial misconduct and concluded that they either were not misconduct or, if they were, that Leavitt's right to a fair trial was not jeopardized by them. *Leavitt III*, 383 F.3d at 827-35.

As to the prosecutor's comments on Leavitt's invocation of his Fifth Amendment right to remain silent, the Ninth Circuit concluded that Leavitt was "confusing true silences with lies, and cooperation with feints at cooperation coupled with suggestions to the jury that he had, in fact, cooperated." *Id*. at 827. Some of the prosecutor's comments were permissible to show inconsistencies in Leavitt's statements or to rebut his claim that he was cooperative with the police. *Id*. Others, while perhaps improper, were "harmless as far as this habeas corpus proceeding is concerned." *Id*. at 828 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

The Ninth Circuit was most troubled by the prosecutor's suggestion to the jurors in his closing argument that the jury was a "link in the chain" with law enforcement, which the court characterized as "just plain wrong." *Id*. at 834. But the court concluded that the

**MEMORANDUM DECISION AND ORDER - 30**

improper argument did not deny Leavitt due process because "the whole record of this case – the strength of the evidence and the paucity of error – assures us that this deviation from propriety was not enough to make any difference in the result." *Id.* at 834-35.

Had trial counsel objected to the prosecutor's allegedly improper questions or argument, the objections would have either been overruled as lacking in merit or, if sustained, there is no reasonable probability that the result of the trial would have been different. There is no need to reopen the judgment as to this claim.

> (5)    *Failure to Exclude Evidence of Leavitt's Display of a Knife During a Sexual Encounter (Dkt. 41, ¶ 72)*

During the defense's case-in-chief, Jay Kohler presented the testimony of Barbara Rich, who had been involved in a brief sexual relationship with Leavitt a few months before the crime in this case. (State's Lodging A-17, pp. 1640-41.) Kohler questioned Ms. Rich about a letter that she had written to Leavitt describing their sexual encounter, which the defense later contended caused Leavitt's wife to become jealous and try to commit suicide with a razor blade. (*Id.* at 1641, 1683-86.) This alleged suicide attempt was offered as an explanation for the cut that Leavitt had sustained to his finger. (*Id.* at 1683-86.)

On cross-examination, the prosecutor elicited testimony from Ms. Rich, without objection, that Leavitt had shown her a knife immediately before they had sex. (State's Lodging A-17, pp. 1645-48.) While Ms. Rich admitted that she found Leavitt's display of the knife to be "strange," she did not feel threatened or scared by it. (*Id.* at 1648-49.) The

**MEMORANDUM DECISION AND ORDER - 31**

knife was never found and, consequently, could not be ruled out as the murder weapon.

Leavitt claims that his trial counsel's failure to prevent the prosecutor's line of questioning, or to move to strike the testimony, amounted to ineffective assistance. Addressing the underlying substantive claim, the Ninth Circuit has determined that the introduction of the "other acts" evidence was not unconstitutional because it was relevant to identifying the killer and to rebut Leavitt's theme of cooperation with the police. *Id.* at 829. The Ninth Circuit also found that, even if the trial court erred in admitting the evidence, Leavitt was not prejudiced. *Id.*

As an added gloss on the Ninth Circuit's merits-based rejection of the underlying evidentiary issue, which defeats the ineffective assistance claim, *see Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), it appears that defense counsel made a tactical decision that the need to build a foundation on Ms. Rich's testimony to explain the cut to Leavitt's finger outweighed the risk that the evidence might open the door to other damaging information. This is the type of mid-trial calculation by counsel that should not be second-guessed in habeas proceeding.

*(6)    Failure to Prove Juror Misconduct (Dkt. 41, ¶ 73)*

This Court has already held an evidentiary hearing on the claim of juror misconduct and found it lacking in merit. (Dkt. 120, pp. 115-18.)  Leavitt does not appear to press the matter again as an ineffective assistance claim, and the Court concludes that it is not substantial.

*(7)    Failure to Raise Jury Instruction Issues (Dkt. 41, ¶ 74)*

**MEMORANDUM DECISION AND ORDER - 32**

In the final paragraph in Claim 9 of the Amended Petition, Leavitt alleged:

[c]ounsel on appeal and in the post-conviction proceeding failed to raise numerous issues in those proceedings and failed to investigate properly the claims raised in the post-conviction petition, including, but not limited to, the trial court's failure to adequately instruct on the presumption of innocence and the requirement of proof beyond a reasonable doubt, see Claim 11, below.

(Dkt. 41, ¶ 74.)

Earlier in this proceeding, the Court construed this paragraph as containing a claim of ineffective assistance of *appellate* counsel, referring to David Parmenter, in not raising on appeal the jury instructional issues to which Leavitt had referred in Claim 11(the Court recognized that the law at the time did not allow for relief because of inadequate post-conviction counsel). (Dkt. 62, pp. 15-16.) The Court did not construe the paragraph as raising a claim of ineffective assistance of *trial* counsel, and it expressly rejected "the petitioner's apparent effort to reserve the right to identify in the future other grounds supporting this claim." (Dkt. 62, p. 15 n.7.)

Leavitt sought reconsideration of the Court's order, but only insofar as to the Court's narrow interpretation of the scope of the ineffective assistance of appellate counsel claim; he did not then suggest that paragraph 74 of Claim 9 must be read to include an allegation that trial counsel failed to object to certain jury instructions. (Dkts. 66, 67.) Even his proposed amendment to clarify that portion of Claim 9 focused only on appellate counsel. (*See* Dkt. 66, pp. 3 (substituted ¶ 74(e) ("[c]ounsel on appeal failed to challenge the instructions on proof beyond a reasonable doubt and the presumption of

**MEMORANDUM DECISION AND ORDER - 33**

innocence which are the basis for Claim 11 of the First Amended Petition.") In Claim 11, Leavitt made a direct attack on the trial court's instructions under the Fourteenth Amendment rather than a collateral challenge to those instructions through the guise of an ineffective assistance of trial counsel claim.

In short, a stand-alone Sixth Amendment trial counsel claim on this basis has never been raised. Leavitt's attempt to broaden the scope of Claim 9 to include such a claim now is equivalent of a late substantive amendment to the Petition. As a new claim, it is not within the scope of the reconsideration issues properly before the Court.

But if this claim had been previously raised and dismissed as procedurally defaulted, there would be no need to reconsider that ruling because the claim otherwise lacks substantial merit. Although this Court found constitutional error in the trial court's reasonable doubt instructions, much water has flowed under the bridge since that decision.

First, the Ninth Circuit has reviewed the same jury instructions on appeal and passed judgment on them. *Leavitt III*, 383 F.3d at 818-23. While it ultimately decided that Leavitt's instructional claim was *Teague*-barred, the court made several observations on its way to reaching this conclusion that betrayed its skepticism about the merits-based decision. Perhaps most relevant is that the panel did not believe that the surrounding instructions were unduly confusing, ambiguous, or misleading. *Id*. at 821. For example, the Ninth Circuit agreed that Instruction 12 – which informed jurors that the burden of proof is not intended to aid anyone who is in fact guilty to escape – was disfavored,

**MEMORANDUM DECISION AND ORDER - 34**

though not necessarily on constitutional grounds, but it was not overly concerned with another instructing the jurors that they "should," rather than "must," require proof beyond a reasonable doubt. *Id*. at 19-822. It was equally untroubled by the trial court's use of "moral evidence," "moral certainty," and "not mere possible doubt," noting that a nearly identical reasonable doubt instruction was upheld in *Victor v. Nebraska*, 511 U.S. 1, 16 (1994). *Id*  It also found unproblematic an instruction that informed the jury that the prosecution need not prove every fact in the case beyond a reasonable doubt, only every element of the crimes charged. *Id*. Though it did conclude that the trial court's alibi instruction erroneously placed a burden on the petitioner, it determined that the instruction did not play a significant role in the jury's understanding of reasonable doubt. *Id*. at 823.

Later, a different panel addressed a similar set of jury instructions defining reasonable doubt and related concepts on the merits in *Rhoades v. Henry*, 638 F.3d 1027 (9th Cir. 2011), and denied relief. Like the *Leavitt III* panel, the *Rhoades* panel found that the instruction informing the jury that the presumption of innocence is not intended to aid the guilty was improper. *Id*. at 1045. But it concluded that, in the context of other instructions that were materially similar to those given here, there was no reasonable probability that the jury would have understood that it could convict on a lower burden of proof than beyond a reasonable doubt. *Id*. The Ninth Circuit has spoken on this issue, and its rulings bind this Court.

This claim does not support reconsideration under Rule 60(b) because Leavitt is

**MEMORANDUM DECISION AND ORDER - 35**

attempting to amend his Petition to include new ground for relief. In the alternative, given that the underlying instructional claim is without substantial possible merit, any collateral challenge to the instructions through a claim of ineffective assistance of counsel is also meritless.

For all of these reasons, Leavitt has not demonstrated that extraordinary circumstances warrant setting aside the judgment in this matter.

## APPLICATION FOR A PRELIMINARY INJUNCTION

Because the Court finds that Leavitt is not likely to succeed on the merits of his claims, he has not carried his burden to establish that a stay of the scheduled execution is warranted. *See Rhoades v. Reinke*, 671 F.3d 856, 858-59 (9th Cir. 2011) (setting out the standards for granting a preliminary injunction, which include a showing that the movant is likely to succeed on the merits).

In addition, the Court is not persuaded by Leavitt's argument that D. Idaho L. Civ. R. 9.1(c) requires the Court to enter a stay. That Local Rule applies only when a petition is filed initiating proceedings, but even if the Rule were applicable to this situation, the stay extends only "for the duration of proceedings in this court." *Id*. Because the Court denies the present Motion, proceedings in this court have terminated.

The request for a stay will be denied.

## ORDER

**IT IS ORDERED:**

1.      Petitioner's Motion for Relief from Judgment Pursuant to Fed. R. Civ. P.

**MEMORANDUM DECISION AND ORDER - 36**

60(b) [and] Application for Further Stay of Execution (Dkt. 318) is

DENIED.



DATED:  **June 1, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge